## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Feb 03 2015, 8:35 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

Attorney for Mother D.S.
Phyllis J. Emerick
Bloomington, Indiana

Attorney for Father B.P.
Amy P. Payne
Bloomington, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
James D. Boyer
Deputies Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of:
T.P., K.P., and D.P., minor children,
and
D.S., Mother, and B.P., Father,

*Appellants-Respondents,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

February 3, 2015

Court of Appeals Case No.
53A01-1408-JT-337

Appeal from the Monroe Circuit Court; The Honorable Stephen R. Galvin, Judge;
53C07-1402-JT-81
53C07-1402-JT-82
53C07-1404-JT-182

**May, Judge.**

[1] D.S. (Mother) and B.P. (Father) (collectively, Parents) appeal the involuntary termination of their parental rights to T.P., K.P., and D.P. (collectively, Children). We affirm.

## FACTS AND PROCEDURAL HISTORY

[2] T.P. was born March 3, 2011, K.P. was born January 16, 2012, and D.P. was born February 11, 2013. On January 3, 2012, after complaints of substance abuse and domestic violence in T.P.'s presence, Parents entered into a court-approved Informal Adjustment Plan to address those issues. On March 29, the Department of Child Services (DCS) removed T.P. and K.P. from Parents' home after Parents left them with an intoxicated babysitter. On March 30, DCS filed petitions to adjudicate T.P. and K.P. as Children in Need of Services (CHINS) based on Parents' substance abuse and domestic violence issues.

[3] On August 2, Parents admitted to the allegations in the CHINS petitions and T.P. and K.P. were adjudicated as such. On September 10, the court entered a dispositional order, requiring Parents to participate in services such as couples counseling, parenting assessments, substance abuse screenings, and substance abuse treatment. On December 3, the court held a review hearing and found Parents had not complied with the requirements of the dispositional decree.

[4] On February 11, 2013, D.P. was born. On February 14, D.P. was removed from Parents' custody because Mother tested positive for marijuana while pregnant with D.P. and because of the pending CHINS case involving T.P. and K.P. On February 28, the court adjudicated D.P. a CHINS based on Parents'

admissions to the CHINS allegations. On March 28, the court issued a dispositional order requiring Parents to participate in reunification services.

[5] On February 19, 2014, DCS filed a petition to terminate Parents' parental rights to T.P. and K.P. On April 8, DCS filed a petition to terminate Parents' rights to D.P. The court held an evidentiary hearing on June 18 and on July 10, issued an order terminating parental rights.

## DISCUSSION AND DECISION

[6] We review termination of parental rights with great deference. *In re K.S., D.S., & B.G.*, 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). We will not reweigh evidence or judge credibility of witnesses. *In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences most favorable to the judgment. *Id.* In deference to the juvenile court's unique position to assess the evidence, we will set aside a judgment terminating a parent's rights only if it is clearly erroneous. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *reh'g denied*, *trans. denied*, *cert. denied* 534 U.S. 1161 (2002).

[7] When, as here, a judgment contains specific findings of fact and conclusions thereon, we apply a two-tiered standard of review. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). We determine first whether the evidence supports the findings and second whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen*

*v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the juvenile court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208.

[8] "The traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *In re M.B.*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. A trial court must subordinate the interests of the parents to those of the child, however, when evaluating the circumstances surrounding a termination. *In re K.S.*, 750 N.E.2d at 837. The right to raise one's own child should not be terminated solely because there is a better home available for the child, *id.*, but parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. *Id.* at 836.

[9] To terminate a parent-child relationship, the State must allege and prove:

> (A) that one (1) of the following is true:
>
>> (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.
>>
>> (ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.
>>
>> (iii) The child has been removed from the parent and has been under the supervision of a county office of family and children or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child

being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). The State must provide clear and convincing proof of these allegations. *In re G.Y.*, 904 N.E.2d 1257, 1260-61 (Ind. 2009), *reh'g denied*. Because our legislature wrote subsection (B) in the disjunctive, a trial court needs to find only one of the three requirements established by clear and convincing evidence before terminating parental rights. *In re L.S.*, 717 N.E.2d at 209. If the court finds the allegations in the petition are true, it must terminate the parent-child relationship. Ind. Code § 31-35-2-8.

Parents argue DCS did not present sufficient evidence to prove Ind. Code §§ 31-35-2-4(b)(2)(B)(i), (B)(ii), or (C).

### 1. *Remedy of Conditions Resulting in Children's Removal*

The trial court found the conditions that resulted in Children's removal would not be remedied. In making such a determination, a trial court must judge a parent's fitness to care for his or her child at the time of the termination hearing,

taking into consideration evidence of changed conditions. *In re J.T.*, 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), *trans. denied*. It must evaluate the parent's habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation. *Id*. Pursuant to this rule, courts have properly considered evidence of a parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate housing and employment. *A.F. v. Marion Cnty. Office of Family & Children*, 762 N.E.2d 1244, 1251 (Ind. Ct. App. 2002), *trans. denied*. The trial court may also properly consider, as evidence of whether conditions will be remedied, the services offered to the parent by DCS, and the parent's response to those services. *Id*. A trial court need not wait until a child is irreversibly influenced by a deficient lifestyle such that his or her physical, mental, and social growth are permanently impaired before terminating the parent-child relationship. *In re E.S.*, 762 N.E.2d 1287, 1290 (Ind. Ct. App. 2002).

[13]     The trial court found:

> There is a reasonable probability that the conditions which resulted in the removal of the [C]hildren, or the reasons for placement outside the home of the parents, will not be remedied, and/or, the continuation of the parent-child relationship poses a threat to the well-being of the [C]hildren.
>
> In October, 2011, six month old [T.P.] was knocked to the floor during a fight between [Mother] and [Father]. They continued to fight while he lay crying on the floor. [Mother] was pregnant at the time. [Father] was arrested and ultimately convicted for [sic] battering [Mother].
>
> [T.P.] and [K.P.], then a new two months [sic] old, were removed from their parents' care on March 29, 2012, after they were found with

a babysitter who was intoxicated. Their mother had gone out for cigarettes and never returned. [Mother] and [Father] admitted that the [C]hildren were Children in Need of Services.

At the Dispositional Hearing on September 10, 2012, [Mother] and [Father] were ordered to participate in services to address their substance abuse and domestic violence issues. Despite being offered services, the pattern of domestic violence and substance abuse continued.

On January 4, 2013, [Mother], then eight months pregnant, stabbed [Father] with a knife, puncturing his lung. [Father] was hospitalized for four days. [Mother] was arrested and ultimately convicted for [sic] Battery, a class C felony. [Mother] takes no responsibility for her acts. She describes the stabbing as a "scratch." [Mother] admitted to smoking marijuana while pregnant with [D.P.]. [Father] also continued to use controlled substances.

On March 23, 2013, [Mother] and [Father] were arrested during an argument with a security guard at a local skating rink. Both were drinking at the time of their arrest.

After [Father] was released from jail in April, 2013, he made progress while on house arrest at a relative's home. However he returned to live with [Mother] in October, 2013. Their participation in services immediately declined. On December 15, 2013, police were called to their home due to a domestic disturbance. They heard a woman scream "get off of me." They kicked down the door. [Father] and [Mother] were both intoxicated. The apartment reeked of alcohol. Both were loud and argumentative. Both were arrested.

On May 8, 2014, police were again called to [Mother's] home following an argument between [Mother] and [Father]. [Mother] told Ms. Richardson [the home-based case manager] that she had a split lip and intimated that [Father] had caused the injury.

Both parents have been offered extensive services for over two years. [Mother] and [Father] participated in Couples therapy with Vershawn Champion beginning in May, 2013. They did not benefit from the counseling. They minimize and excuse their behavior. Their primary relationship is with each other. Their relationship with [Children] is secondary. They do not understand how their actions adversely affect [Children]. They did not follow their Safety Plan when they relapsed in December, 2013. They were primarily focused on how to avoid

detection when using and not on refraining from using. If one uses drugs or alcohol, both use. Ms. Champion notes that their relationship is "toxic."

[Mother] began individual therapy with Catherine Colbert in September, 2013. They were scheduled to meet weekly. By November, 2013, Ms. Colbert was having difficulty reaching [Mother]. Following her relapse in December, [Mother] regularly attended therapy sessions in January, February, and March, 2014. However, she stopped attending therapy on March 14, 2014. [Mother] was resistant to therapy and refused to address her anger and domestic violence issues. She made little progress.

Melissa Richardson attempted to offer home-based services to [Mother] beginning in January, 2013. She attempted to address issues such as housing, income, parenting skills, budgeting, resource acquisition, and assistance in meeting the goals of the case plan. However, [Mother] refused to acknowledge that she had problems that needed to be addressed. As Ms. Richardson testified, [Mother] has made no long-term changes in her behavior.

[Mother] has failed to complete [Intensive Outpatient Program] at least three times since [T.P.] and [K.P.] were removed. She has no job and no source of income. Her rent is paid through a federal grant.

[Father] ceased to participate in any services beginning in March, 2014. Despite the overwhelming evidence to the contrary, [Father] denies that he has a drug problem or a problem with domestic violence.

Although [Mother] and [Father] testified that they recently decided to separate, this testimony is not credible. For the past two years, despite the loss of [Children], repeat episodes of domestic violence, ongoing substance abuse and alcohol abuse, and repeated arrests, both have chosen to maintain their relationship. Clearly, their relationship means more to them than their own well-being and the well-being of [Children].

Given the parents' extensive history of substance abuse, domestic violence, and failed treatment, there is no reasonable probability that the conditions which resulted in the removal of [Children] will be remedied.

Further, the parents have repeated [sic] demonstrated that they will continue to use drugs and alcohol, and to engage in acts of domestic violence, even if this behavior endangers [Children]. They twice engaged in brutal altercations when [Mother] was pregnant. In 2011, they did not even stop fighting when six month old [T.P.] was knocked to the floor and was crying. In light of this pattern of violence and substance abuse, it is clear that continuation of the parent-child relationship poses a threat to the well-being of [Children].

(App. of Appellant D.S. at 8-10.)

Father argues he has "largely complied," (Br. of Appellant B.P. at 7), with the requirements of the Dispositional Order, noting he completed an intensive outpatient substance abuse treatment program, attended couples counseling, is employed, and pays child support. However, he overlooks the domestic violence that occurred throughout the proceedings, which was one of the reasons for Children's removal. Similarly, Mother argues she completed many of the required services, but does not acknowledge her admission that she will always be an alcoholic, or the fact that, despite three attempts at an intensive outpatient substance abuse treatment program, she has relapsed multiple times during the proceedings. Parents' arguments are invitations for us to reweigh the evidence, which we cannot do. *See In re D.D.*, 804 N.E.2d at 265 (appellate court cannot reweigh evidence or judge the credibility of witnesses).[1]

---

[1] Parents also argue DCS did not present sufficient evidence the continuation of the parent-child relationship posed a threat to the well-being of Children. However, as DCS presented sufficient evidence the conditions under which Children were removed would not be remedied, we need not address that argument. *In re L.S.*, 717 N.E.2d at 209 (because statute written in disjunctive, court needs to find only one requirement to terminate parental rights).

## 2. Best Interests of the Children

[16] Pursuant to Ind. Code § 31-35-2-4(b)(1)(C), DCS must provide sufficient evidence "that termination is in the best interests of the child." In determining what is in the best interests of a child, the trial court is required to look beyond the factors identified by DCS and to consider the totality of the evidence. *In re J.S.*, 906 N.E.2d 226, 236 (Ind. Ct. App. 2009). In so doing, the trial court must subordinate the interests of the parent to those of the child. *Id*. The court need not wait until a child is harmed irreversibly before terminating the parent-child relationship. *Id*. Recommendations of the case manager and court-appointed advocate, in addition to evidence the conditions resulting in removal will not be remedied, are sufficient to show by clear and convincing evidence that termination is in the child's best interests. *Id*. A parent's historical inability to provide a suitable environment, along with the parent's current inability to do the same, supports finding termination of parental rights is in the best interests of the children. *Lang v. Starke County Office of Family and Children*, 861 N.E.2d 366, 373 (Ind. Ct. App. 2007), *trans. denied*.

[17] The trial court found and concluded:

> [T.P.] and [K.P.] are placed with their grandparents, [R.G.] and [D.G.]. They have spent most of their lives in this home. This is the only true home they have ever known. Their grandparents provide them with a safe and loving home. Although [D.P.] is in foster placement, he is in the process of transitioning to his grandparents' home.
>
> As noted above [in the findings of facts and conclusions of law regarding the probability that the conditions under which Children were removed would not be remedied and the continuation of the

parent-child relationship posed a risk to the well-being of Children], [Mother] and [Father] have demonstrated that they cannot provide [Children] with a safe and stable home.

Clearly, termination of the parent-child relationship is in the best interests of [Children].

(App. of Appellant D.S. at 10-11.)

Parents both argue Children's need for permanency, standing alone, "is not an adequate reason for termination of the parent-child relationship." (Br. of Appellant B.P. at 15.) However, this argument ignores the court's other findings regarding their substance abuse and domestic violence issues, and it is an invitation for us to reweigh the evidence, which we cannot do. *See In re D.D.*, 804 N.E.2d at 265 (appellate court cannot reweigh evidence or judge the credibility of witnesses).

# CONCLUSION

DCS presented sufficient evidence the conditions that resulted in Children's removal from Parents' care would not be remedied and the termination of the parent-child relationship was in Children's best interests. Accordingly, we affirm the termination of Parents' parental rights to Children.

Affirmed.

Barnes, J., and Pyle, J., concur.